IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CLARENCE DEES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:17-CV-535-MHT-SRW |
| | ) | (WO) |
| | ) | |
| KARLA JONES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

### **I. INTRODUCTION**[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed on August 8, 2017 by Clarence Dees, an indigent state inmate, challenging actions which occurred at Ventress Correctional Facility. (Doc. 1). Specifically, Dees alleges that the defendants acted with deliberate indifference when they failed to protect him by allowing another inmate to attack him while there was "no officer presence in the dorm." *Id.* at 3. He further alleges that Officer Higgins used excessive force by using mace on him in an attempt to break up the fight. *Id.* He also maintains that medical personnel were deliberately indifferent to his medical needs in that he "was taken to the H.C.U. with chest and back wounds, and Nurse Wagner instructed the medical personell [sic] to just bandage me and not to send me out to the free world or give me a tetanus shot." *Id.* Finally, plaintiff claims

---

[1] All documents and page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

that Nurse Burks and Warden Jones have conspired against him to deprive him of access to the inmate grievance process.  *Id.*

The named correctional defendants are Warden Karla Jones and Correctional Officers Elijah Rouse, Josiah Haggins and Tameka Grey. The named medical defendants are Nurses Donna Wagner and Nettie Burks. Dees sues each defendant in his or her individual capacity and seeks monetary damages from the defendants.  (Doc. 1 at p. 4).

The correctional defendants filed a special report (Doc. 16) and a supplemental special report. (Doc. 29). The medical defendants also filed a special report. (Doc. 18). These special reports, as supplemented, include relevant evidentiary materials in support of these reports, specifically affidavits and prison documents addressing the claims presented by Dees.  In these documents, the defendants deny that they acted with deliberate indifference to Dees' medical and safety needs and deny using excessive force against him. They also deny depriving him of access to the grievance procedure.

After reviewing the special reports and exhibits, the court issued an order on June 4, 2018, requiring Dees to file a response to the defendants' special reports, supported by affidavits or statements made under penalty of perjury and other evidentiary materials. (Doc. 41).  This order specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary

2

judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 41 at p. 3). Dees filed a response to this order. (Doc. 44). Pursuant to the order entered on June 4, 2018, the court now treats the defendants' special report and supplements thereto as a motion for summary judgment and concludes that summary judgment is due to be granted in favor of the defendants.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Rule 56(a), Fed.R.Civ. P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the

---

[2]Although Rule 56 underwent stylistic changes in 2010, the revision of "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word — genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id.* "'Shall' is also restored to express the direction to grant summary judgment." *Id.* Despite these changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

absence of a genuine [now dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Williamson Oil Company, Inc. v. Phillip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003) (holding that moving party bears the initial burden of establishing there is no genuine dispute as to any material fact); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (same). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by demonstrating that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24. The moving party discharges his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011)

When the defendants have met their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."). Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by

4

depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact. *Jeffery*, 64 F.3d at 593–94 (internal quotation marks omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).

To proceed beyond the summary judgment stage, an inmate-plaintiff may not rest upon his pleadings but must produce "sufficient [favorable] evidence" which would be admissible at trial supporting each essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249–50. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the

[trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576–77 (11th Cir. 1990) (internal citation omitted). Conclusory allegations based on a plaintiff's subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (holding that grant of summary judgment is appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (holding that summary judgment is appropriate where no genuine dispute of material fact exists). At the summary judgment stage, this court must "consider all evidence in the record

. . . [including] pleadings, depositions, interrogatories, affidavits, etc. — and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists." *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248. "Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment." *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F.Supp.2d 1297, 1301 (M.D. Fla. 2011) (citing *Anderson*, *supra*).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence

7

before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323–24. A court may grant summary judgment where the pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact. *Id*. To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Dees' pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough review of all the evidence contained in the record. It finds that Dees has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

8

## III. FACTS

In his response to the Defendants' Special Reports, Dees testified by affidavit as follows:

On the date and day of July 19, 2018, at around 9:00-9:30 am in dormitory E (E4 side) I, Clarence Dees, #234915, was involved in a physical altercation with another inmate; Coron Abdullah # 289416. Reason being that this inmate had stole my ring (wedding band) and stole it, to come back and try to sell it back to me. When the physical altercation did start off there was no officer present in dormitory or in the dormitory cubicle area. During altercation (the first one that dorm officer was not present for); I took inmate Coron Abdullah's prison made knife and stab him in the back with it. At no time was I armed with my own prison made knife.

Once we both were separated by other inmates in the dorm, inmate Coron Abdullah #289416 left the dorm and then he returned with another prison made knife and began to chase me around the dorm for 10-15 minutes. At this time I had got rid of the first prison made knife I took from him just minutes before, so again I was unarmed. When he had me blocked in to where I couldn't get pass him without getting stabbed, Sergeant Josiah Haggins entered into E4 side; Dormitory E, using a key because no cubicle officer was present whom supposedly had been Cubicle Operator Tameka Grey, whom states in her affidavit that she was moved to shift office to assist in the shift office in a area of the prison that already had an employee present; leaving the cubicle with nobody in it at all; which clearly is a safety hazard.

When Sergeant Josiah Haggins entered the door inmate Coron Abdullah's back was to him with his prison made knife in his hand; I was faced towards Sergeant Haggins when he sprayed the Sabre Red chemical agent (mace) multiple times striking me directly in the face. He then; (Sgt. Haggins) ordered me to leave out of dorm; at this time I was not stabbed at all yet period. Sergeant J. Haggins said he had the inmate Coron Abdullah restrained and it was safe to go around both of them and exit dormitory E from E4 side. At my attempt to exit dorm, Sgt. Haggins lost control and restraint of Coron Abdullah. This is when inmate Coron Abduallah began to charge me swinging prison made knife wildly striking me and missing me multiple times. Sgt. Haggins begin to spray mace again from behind inmate Coron Abdullah striking me in the face again. He never pulled out police

baton or nothing, just kept saying stop as this lasted from Dormitory E (E side) to out on the yard outside in front of Dormitory E.

It was only God's work and grace I only received 6 minor wound (to my chest, shoulder, head and back) which my body chart only states I received 3 injuries (wounds). This altercation led from Dormitory E; E4 side out into the hallway, and out into the yard in front of Dormitory E where officers and Lts. responded to code being called; which took about 5-6 minutes to respond to. Officer Darius Lewis was the officer whom hand-cuffed inmate Coron Abdullah and retrieved prison made knife off him; (which makes Incident Report and Duty Report False; As well as the Investigative Report). I then was escorted by inmates standing outside back into dormitory E to E4 side to restroom area to rinse off body and face. That is when Sgt. J. Haggins hand cuffed me.

Lt. Micheal Calhoun escorted me to the healthcare. When I got to healthcare I was never seen by a doctor; I never was offered a tetanus shot. After the medical staff had checked the depths of my wounds I was allowed a shower in the healthcare; I was given new clothes. I received bandages to my (head, shoulder, chest and back) then escorted to the Restricted Privileged Dormitory.

(Doc. 44 at pp. 1-3). (Paragraph indentions added).

## IV.  DISCUSSION

### A.  RESPONDEAT SUPERIOR

To the extent that the plaintiff alleges that Warden Karla Jones is liable to him in as a supervisor based on a theory of respondeat superior, that claim must fail. The law is well established that supervisory officials cannot be held liable in §1983 actions under any theory of respondeat superior or vicarious liability. *See, Belcher v. City of Foley,* 30 F.3d 1390, 1396-97 (11th Cir. 1994). Accordingly, the Court concludes that the plaintiff's claims premised upon a theory of respondeat superior are due to be dismissed.

### B.  DELIBERATE INDIFFERENCE

1. **Standard of Review.**  "A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (internal quotation marks and citations omitted). Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health and safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it. *Id*. at 828. A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. "Within [a prison's] volatile community, prison administrators are to take all necessary steps to ensure the safety of . . . the prison staffs and administrative personnel. . . .  They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984) (internal quotation marks omitted). The Eleventh Circuit has, however, consistently stressed that a "prison custodian is not the guarantor of a prisoner's safety." *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990); *Purcell ex rel. Estate of Morgan v. Toombs County*, *Ga.*, 400 F.3d 1313 (11th Cir. 2005) (same). "Only [a] prison official's deliberate indifference

to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (internal quotation marks and citation omitted). "[D]eliberate indifference describes a state of mind more blameworthy than negligence" and, therefore, ordinary lack of due care for a prisoner's health or safety will not support an Eighth Amendment claim. *Farmer*, 511 U.S. at 837. "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

The law is well settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation. *Caldwell*, 748 F.3d at 1099. With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . .  The Eighth Amendment does not outlaw cruel and unusual conditions; it outlaws cruel and unusual punishments. . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did

not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38 (internal quotation marks omitted); *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists – and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference."

*Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotation marks and citations omitted). Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id*. Even where a prison official perceives a serious risk of harm to an inmate, the official "may still prevail if he responded reasonably to the risk, even if the harm ultimately was not averted." *Comstock v. McCrary*, 273 F.3d 693, 706 (6th Cir. 2001) (internal quotation marks and citation omitted). In sum, prison officials cannot be held liable under the Eighth Amendment unless there is an objectively substantial risk of harm to an inmate, the defendants have knowledge of this substantial risk of harm and with this knowledge consciously disregard the risk. *Farmer*, 511 U.S. at 837.

**2. <u>Failure to Protect</u>.** To survive the properly supported motion for summary judgment filed by the defendants, Dees must first demonstrate the existance of an objectively substantial risk of serious harm to him and "that the defendants disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014), citing *Caldwell*, 748 F.3d at 1100. If he establishes these objective elements, Dees must then satisfy the subjective component. This requires Dees to show "that [each] defendant subjectively knew that [he] faced a substantial risk of serious harm. The defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). In

14

determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "particular threat or fear *felt by [the] [p]laintiff*." *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir.2003) (emphasis added). Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also draw that inference." *Id*. at 1349 (quotations omitted).).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (emphasis in original).

The undisputed evidence shows that on the morning of July 19, 2018, the plaintiff and another inmate, Coron Abdullah, argued over possession of the plaintiff's wedding band. The plaintiff admits that he took a prison-made knife from Abdullah and stabbed Abdullah in the back with it. (Doc. 44 at pp. 1-2). The plaintiff also indicates that during this time no correctional officers were present. He claims, however, that the correctional defendants created a "safety hazard" by failing to place a guard in the cubicle where the altercation took place. (Doc. 44 at p. 2).  He further admits that during this time he was not injured.  *Id.*

The plaintiff states that, thereafter, Sgt. Haggins interceded in the altercation and restrained Abdullah, and told plaintiff it was "safe to go around both of them and exit dormitory E." *Id.* He explains that "Sgt. Haggins [then] lost control and restraint of Coron Abdullah" and this is when Abdullah attacked him with a knife.  (Doc. 44 at p. 3).  After about 5 minutes, "officers and Lts. responded to the code being called . . . [and] Officer Darius Lewis . . .  handcuffed inmate Coron Abdullah and retrieved a prison made knife off him." *Id.*

Based upon the court's careful review of all the evidence, it concludes that the plaintiff fails even to allege, much less to offer any proof, that the defendants were aware that he was at risk for suffering an assault. Indeed, by the plaintiff's own admission, he himself provoked the assault by stabbing Abdullah in the back. (Doc. 44 at p. 2). Moreover, the plaintiff acknowleges that Sgt. Haggins did intercede in the altercation between him and Abdullah, attempted to restrain Abdullah, and thought that he had succeeded in doing so. Plaintiff also admits that, within minutes, other correctional officers successfully handcuffed Abdullah. (Doc. 44 at pp. 2-3).  Plaintiff offers no evidence that the correctional defendants deliberately refused to intercede in the altercation or encouraged it in any way. Rather, the plaintiff's own statement of the facts demonstrates that Sgt. Haggins responded to the altercation using mace. When his attempts to break up the altercation failed, he sought the assistance of other correctional defendants who responded to a code and succeeded in restraining the plaintiff and Abdullah. *Id.* Thus, the court concludes that summary judgment is due to be granted in favor of the defendants on plaintiff's claim of deliberate indifference to his safety.

### 3.  Medical Treatment

Plaintiff claims that the medical defendants were deliberately indifferent to his medical needs because, when he was seen in healthcare following his altercation with Abdullah, he was not given a tetanus shot and did not see a doctor, but only saw nurses, and was not sent out to a free-world doctor.  (Doc. 44 at p. 3 and Doc. 1 at p. 3).

That medical malpractice—negligence by a physician—is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble,* 429 U.S. 97, 105–07, 97 S. Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995). Instead, something more must be shown. Evidence must support a conclusion that a prison [medical care provider's] harmful acts were intentional or reckless. *See Farmer v. Brennan,* 511 U.S. 825, 833–38, 114 S. Ct. 1970, 1977–79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. DeKalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to establish "deliberate indifference to [a] serious medical need . . . , Plaintiff[] must show: (1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009). When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248,1255 (11th Cir. 1999) (holding that, for liability to attach, the official must know of and then

disregard an excessive risk to the prisoner). Regarding the objective component of a deliberate indifference claim, the plaintiff must first show "an objectively 'serious medical need[]' . . . and second, that the response made by [the defendants] to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnos[is] or treat[ment],' or even '[m]edical malpractice' actionable under state law." *Taylor*, 221 F.3d at 1258 (internal citations omitted).  To proceed on a claim challenging the constitutionality of medical care, "[t]he facts alleged must do more than contend medical malpractice, misdiagnosis, accidents, [or] poor exercise of medical judgment."  *Daniels v. Williams*, 474 U.S. 327, 330–33 (1986).

In addition, "to show the required subjective intent . . . , a plaintiff must demonstrate that the public official acted with an attitude of deliberate indifference . . . which is in turn defined as requiring two separate things[:] awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists [] and . . . draw[ing] of the inference[.]" *Taylor*, 221 F.3d at 1258 (internal quotation marks and citations omitted). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).  Furthermore, "an official's failure to alleviate

18

a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. When medical personnel attempt to diagnose and treat an inmate, the mere fact that the chosen "treatment was ineffectual . . . does not mean that those responsible for it were deliberately indifferent." *Massey v. Montgomery County Det. Facility*, 646 F. App'x 777, 780 (11th Cir. 2016).

> In articulating the scope of inmates' right to be free from deliberate indifference, . . . the Supreme Court has . . . emphasized that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle,* 429 U.S. at 105, 97 S. Ct. at 291; *Mandel* [*v. Doe,* 888 F.2d 783, 787 (11th Cir. 1989)]. Medical treatment violates the eighth amendment only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers*, 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S. Ct. at 292 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Mandel*, 888 F.2d at 787–88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). "[A]s *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d

at 1545 (citation and internal quotation marks). To show deliberate indifference, the plaintiff must demonstrate a serious medical need and then must establish that the defendant's response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor*, 221 F.3d at 1258 (citation and internal quotation marks omitted); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (holding that "[a] difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that the mere fact an inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (holding that prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient); *Amarir v. Hill*, 243 F. App'x 353, 354 (9th Cir. 2007) (holding that defendant's "denial of plaintiff's request to see an outside specialist . . . did not amount to deliberate indifference."); *Arzaga v. Lovett*, 2015 WL 4879453, at *4 (E.D. Cal. Aug. 14, 2015) (finding that plaintiff's preference for a second opinion is "not enough to establish defendant's deliberate indifference" as the allegation does "not show that defendant knowingly disregarded a serious risk of harm to plaintiff" nor that defendant "exposed plaintiff to any serious risk of harm.").

     Plaintiff admits that the wounds he received in the altercation with Abdullah were "minor" and that immediately following the altercation he was escorted to healthcare,

where the medical staff "checked the depth of . . . [his] wounds . . . [he] was allowed to shower . . . [and] was "given new clothes" and "received bandages to  . . . [his] head, shoulder, chest and back."  (Doc. 44 at p. 3).  Plaintiff, however, complains that he was not given a tetanus shot, did not see a doctor in prison and was not sent out to a free-world doctor.  (*Id.,* and Doc. 1 at p. 3).  As a matter of law, none of these claims rises to the level of deliberate indifference.  Indeed, Dees admits that his minor wounds were treated promptly. *Id.* The fact that Dees desired medical treatment different from what was actually provided does not establish deliberate indifference. *Hamm,* 774 F.2d at 1575.  Accordingly, summary judgment is due to be granted on the plaintiff's medical deliberate indifference claims.

## C. EXCESSIVE FORCE

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment.  *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (internal quotations and citations omitted). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" *Sims v. Artuz*, 230 F.3d 14, 22 (2nd Cir. 2000) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson*, 503 U.S. at 8. The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id*. (internal quotations omitted). To establish the subjective element, a plaintiff must demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Sims*, 230 F.3d at 21. With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Hudson*, 503 U.S. at 8. In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id*. at 4. "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

Summarizing the excessive force standard in the prison context, the Eleventh Circuit wrote that

> [u]nder the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the

22

> amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7-8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich v. Thornton*, 280 F.3d 1295, 1300-1301 (11th Cir. 2002).

Recently, the Eleventh Circuit applied the *Whitley* factors in a §1983 action brought by a pro se prisoner for injuries he received during the inspection of his cell after he failed to follow an order from the defendant prison officers. *Miles v. Jackson,* 757 F. App'x. 828 (11th Cir. 2018). In *Miles,* the court identified the five factors relevant in determining whether force was applied "maliciously or sadistically" as "(1) the need for the application of force; (2) the relationship between that need and the amount of force used; (3) the threat 'reasonably perceived by the responsible officials,' . . . (4)'any efforts made to temper the severity of the use of a forceful response,'" and  "(5) [t]he absence of serious injury." *Id.,* at 829 citing *Hudson,* 503 U.S at 7; quoting *Whitley,* 475 U.S. at 321.

The Eleventh Circuit also has stated that "[w]hen evaluating whether the force used was excessive, we give broad deference to prison officials acting to preserve discipline and security." *Pearson v. Taylor*, 665 F. App'x 858, 863 (11th Cir. 2016) (citing *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990); *Hudson*, 503 U.S. at 7 (holding that courts are to "give a wide range of deference to prison officials acting to preserve discipline and

security."). In addition, the determination "must not be made in the glow of hindsight." *Griffin v. Troy State Univ.,* 128 F. App'x 739, 742 (11th Cir. 2005) (citation omitted). "Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Bennett*, 898 F.2d at 1533. Generally, correctional officers are authorized to use force when a prisoner "fails to obey an order. Officers are not required to convince every prisoner that their orders are reasonable and well-thought out before resorting to force." *Pearson*, 665 F. App'x at 864 (internal citation omitted).

In considering the application of the *Whitley* factors to the instant case, the court recognizes at the outset that there is no dispute the plaintiff was involved in an altercation with Abdullah over possession of the plaintiff's wedding band which began when the plaintiff stabbed Abdullah in the back with a prison made knife. (Doc. 44 at pp. 1-2). Thus, the court readily concludes that the need for force arose from the altercation and the correctional defendants' need to restore order. *Bennett*, 898 F.2d at 1533. Also, the plaintiff admits that Sgt. Haggins repeatedly told the plaintiff and Abdullah to stop fighting. (Doc. 44 at p. 3). Thus, the court also concludes that force was justified due to the prisoners' failure to obey orders to quit fighting. *Pearson*, 665 F. App'x at 864.

With regard to the amount of force used, the plaintiff admits that Sgt. Haggins "never pulled out [his] police baton" (Doc. 44 at p. 3), but alleges that Sgt. Haggins sprayed mace in his face several times. It is undisputed that the altercation between the plaintiff and Abdullah involved the use of prison-made knives. Thus, the amount of force used by the

24

correctional defendants was justified by the threat of severe bodily harm to the inmates or correctional officers which could have occurred if the correctional officers had not been successful in stopping the fight and handcuffing both the plaintiff and Abdullah. Accordingly, the court concludes that the first four *Whitley* factors weigh against the plaintiff's claim of excessive force. Finally, the court notes that plaintiff does not allege that he received any injuries as a result of the correctional defendants' use of force against him and alleges that he received only "minor" injuries as a result of the altercation with Abdullah. (Doc. 44 at p. 3).  Thus, the court concludes that summary judgment is due to be granted on plaintiff's excessive force claim.

## IV. CONSPIRACY

Dees also alleges that the defendants, Nurse Burks and Warden Jones, conspired to deprive him of access to prison grievance procedures. Specifically, he claims that he "was refused the grievance form because [he was] only allowed to receive them from nursing staff during pill call in which no one ever brought on to the Restricted Privileges Dormitory." (Doc. 44 at p. 5).  This claim fails as a matter of law because Dees has not shown "that the parties 'reached an understanding' to deny plaintiff his or her rights . . . [and] prove[d] an actionable wrong to support the conspiracy." *Bendiburg v. Dempsey,* 909 F. 2d 463, 468 (11th Cir. 1990). Indeed, neither the complaint nor Dees' subsequent pleadings identify any agreement reached by Nurse Burks and Warden Jones to deprive him of access to the grievance process. Rather, he admits that these forms were available

to him during pill call. (Doc. 44 at p. 5). Thus, the court concludes that summary judgment is due to be granted on the plaintiff's conspiracy claim.

## V. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

3. This case be DISMISSED with prejudice.

4. No costs be taxed.

On or before **September 8, 2020** the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made. Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, on this the 25th day of August, 2020.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge